This appeal presents another episode in the history of approximately two decades of hostility between neighboring ocean-front landowners in the city of Beverly.
Background. The plaintiffs, Carol and Jeffrey W. Horvitz (Horvitzes), own a substantial residence and adjoining grounds. The defendant, Evan Wile, owns and controls an adjoining parcel of 2.9 acres of undeveloped land. Wile’s only access to his parcel consists of a right of way over land owned by the Horvitzes. A vivid account of the long-running tensions and litigation between the parties during the span of 1991 into 2003 appears in the decision of Rattigan v. Wile, 445 Mass. 850, 851-855 (2006). The Supreme Judicial Court upheld findings by a judge of the Superior Court that Wile had committed serious and continuing nuisance against the Horvitzes over the years by gratuitous placement of obstructive, unsightly, and malodorous structures and debris near the parties’ property line and by his operation of a helicopter upon his own property (so as to propel debris onto the Horvitz landscape) and in the low airspace above the Horvitz grounds. Ibid.
At the conclusion of its comprehensive discussion, the court adjusted slightly the injunction entered by the Superior Court judge to the following terms:
“[Wile] is permanently enjoined from unreasonably interfering with the use and enjoyment of the [Horvitzes’] property. Without limiting the scope of the foregoing prohibition, [Wile] shall not leave unattended any objects more than six feet in height within forty feet of the [Horvitzes’] boundary line, such as tents, portable toilets, construction and industrial materials, trailers, and warning signs, except reasonable vegetation. [Wile] shall not operate, or cause to be operated, a helicopter on his property or within the zone of interest above the property.”
*865 Id. at 864.
The permanent injunction did not keep the peace. In 2005, the Horvitzes returned to Superior Court for civil contempt sanctions upon allegations (1) that Wile had conducted additional helicopter invasions in May and June of that year and (2) that over a period of four months he had kept open a gateway access to their land as a tactic to harass and to diminish their use and enjoyment of the property. A different judge of the Superior Court (contempt judge), after hearing, found Wile to be in civil contempt, assessed damages of $9,000 for the helicopter intrusions and $36,000 for the gateway activity, and awarded attorney’s fees necessitated by the contempt proceeding in the amount of $14,306.75.
Wile appealed to this court. In an unpublished memorandum and order pursuant to our rule 1:28, we affirmed the finding of liability for civil contempt and upheld the award of damages of $9,000 for the helicopter violations, but we vacated the damages of $36,000 for the gateway violations. Rattigan v. Wile, 15 Mass. App. Ct. 1105 (2009). In the course of his brief in that appeal, Wile specified that he opposed “solely” the amount of damages awarded upon the contempt finding, but that he “did not challenge the Court’s decision to award attomey[’]s fees to the Plaintiffs.”
The rescript order issuing from this court provided as follows:
“The judgment of contempt is affirmed as to both the helicopter and gate violations. The award of damages in the amount of $9,000 for the helicopter violations is affirmed. The award of damages in the amount of $36,000 for the gate violations is vacated.”
The rescript made no mention of the uncontested award of attorney’s fees. The Superior Court entered a conforming verbatim “Judgment after Rescript.” It, too, made no mention of the uncontested award of attorney’s fees. Ten days after entry of the judgment after rescript, the Horvitzes served their motion “to correct a clerical mistake in a judgment" and requested the contempt judge to amend the judgment after rescript so as to include the award of $14,306.75 in attorney’s fees. The contempt judge denied the motion without prejudice. He reasoned, “It appears that the plaintiffs have a valid point but that it should, first, be addressed to the Appeals Court.” The parties have now briefed and presented to us the question whether the judgment after rescript must remain final.
Analysis. Wile argues that a Superior Court judge cannot alter a final re-script order from an appellate court; that only an appellate court can alter its own rescript but that the Horvitzes here failed to ask the Appeals Court to reconsider and to correct the rescript order by a timely petition for rehearing. He relies implicitly upon the text of Mass.R.A.R 28, as amended, 378 Mass. 925 (1979), that “the clerk of the lower court shall, upon receipt of the re-script, prepare, sign and enter the judgment which has been ordered.” (Emphasis supplied.) Explicitly he relies upon the language of Wheatley v. Planning Bd. of Hingham, 10 Mass. App. Ct. 884, 885 (1980): “The plaintiffs did not file a petition for rehearing ... or take any other action to have this court amend or modify the rescript. . . and the judge was bound to enter a final judgment that conformed to our rescript.” For several reasons we reject the notion that in these circumstances a flawed rescript order remains incurable.
*866 First, we observe that the ministerial character of the error in the rescript order is clear. That order issued from this court with a mistaken omission of a directive to include an award of attorney’s fees in the judgment after rescript in the trial court. The source of that error appears equally clear: the award of attorney’s fees was not a contested issue upon appeal; it slipped through the cracks of the final draft of the rescript order possibly upon the assumption that it remained intact as an undisturbed element of the prior judgment in the Superior Court.
Second, the Horvitzes committed no fault. They did not cause the omission in the rescript order. They reacted reasonably promptly to the reduced judgment after rescript in the Superior Court. Ten days after its entry, they requested the contempt judge to correct it. A motion to this court for reconsideration of the rescript order would have been a more appropriate reaction. However, under these unusual circumstances, we do not fault the Horvitzes’ resort to the trial court as the site of the judgment after rescript. Also, their prompt action eliminates any equitable claim of unawareness or of detrimental reliance upon the reduced judgment by Wile. Ten days after its entry, he was aware of a new and contested issue. As an equitable matter, he would suffer no injury from correction of the rescript order; he would merely disgorge an undeserved windfall.
Third, no authority compels the permanence of the mistake. Wile has not invoked any statute or rule for the imposition of a deadline. The quoted language from the Wheatley decision furnishes the strongest color of support for Wile’s argument. However, a full review of its pertinent language undercuts the claim of irrevocability of a rescript order as proposed by Wile. After this court observed that the parties attempting to alter the rescript order in the trial court had failed to file a petition for rehearing in the Appeals Court or to take any other action in this court to amend or to modify the rescript, we added: “The motion [in the trial court] was addressed exclusively to issues which had been considered by this court in the first appeal, and the judge was bound to enter a final judgment that conformed to our rescript.” Ibid. Those words indicate clearly that the rescript order and the conforming trial court judgment resulted rationally from the “considered” or deliberative reasoning and order of the appellate court, and certainly not from an oversight of the appellate court. See Carilli v. Hersey, 303 Mass. 82, 84-85 (1939) (observing that a trial court has equitable authority to supplement an appellate rescript order by updated adjustment of interest and costs for the benefit of the prevailing party; and that the appellate court retains continuing authority “to supervise obedience to its mandate” by rescript order).
An appellate court with inherent authority to supervise implementation of its rescript orders would logically possess similar authority to correct ministerial flaws in its rescript orders. A defective rescript order does not straight]acket the issuing court. By correction of the order, it remains free to accomplish intended substantial justice.[4] See Standard Register Co. v. Bolton-Emerson, Inc., 35 Mass. App. Ct. 570, 574-575 (1993) (errors by court personnel should not prejudice the rights of parties so long as the preservation of those rights remains feasible and does not result in unfair treatment of other parties).
John Connolly, Jr., for the plaintiffs.
Sander A. Rikleen for the defendant.
Conclusion. In the absence of any prohibition by constitutional, statutory, or decisional authority, and in the absence of any unfair detriment to the opposing party, we correct the ministerial mistake resulting in the reduced judgment in the trial court.[5] We order the entry of an amended judgment after rescript in Superior Court adding the award of attorney’s fees in favor of the Horvitzes in the amount of $14,306.75. In all other respects, the judgment after rescript is affirmed.

So ordered.

 “There is an inherent and necessary power in a court of justice acting on the motion of an interested party, at the suggestion of one not a party, or on its own motion to correct errors and remedy omissions in its records in order that they shall speak the truth.” Webb v. Cohen, 280 Mass. 292, 293 (1932), and cases cited.

As indicated by our reasoning, a motion to correct an inaccurate or incomplete rescript mandate (1) should come directly to the appellate court which issued the rescript, (2) concisely identify the alleged error, and (3) not attempt to reargue the merits of the appeal.